UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:26-cv-1264

CORDELL WILLIAMS,

     Plaintiff,

v.

LEGEND SENIOR LIVING, LLC.,

     Defendant.

_____/

### **COMPLAINT**
(42 U.S.C. § 1981 – Race and Color Discrimination, Hostile Work Environment, and Retaliation)

Plaintiff, CORDELL WILLIAMS (hereinafter, "WILLIAMS" or "Plaintiff"),

by and through undersigned counsel, sues Defendant, LEGEND SENIOR LIVING,

LLC. (hereinafter, "LEGEND" or "Defendant"), and alleges:

### INTRODUCTION

1. This action arises under 42 U.S.C. § 1981, which guarantees all persons the same

   right to make and enforce contracts as is enjoyed by white citizens.

2. Section 1981 protects at-will employment relationships and prohibits

   intentional race-based discrimination and retaliation affecting the making,

   performance, modification, and termination of employment.

3. Plaintiff is a Black, African American (Black) individual, who was subjected to repeated race-based harassment, disparate treatment, and retaliatory termination during his employment with Defendant LEGEND.

4. Defendant's conduct was intentional and motivated by racial animus toward Plaintiff because he is Black.

5. Defendant's unlawful conduct culminated in Plaintiff's termination on or about February 25th, 2026.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. This action arises under 42 U.S.C. § 1981.

8. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Sarasota and/or Manatee County, Florida.

## PARTIES

9. Plaintiff, WILLIAMS, resides in Manatee County, Florida.

10. Plaintiff is a Black African American individual (Black).

11. Defendant LEGEND SENIOR LIVING, LLC., is a Foreign Limited Liability Company operating a Senior Living Facility located at 8230 Nature's Way, Lakewood Ranch, Florida 34202.

12. At all relevant times, Defendant LEGEND employed Plaintiff and exercised control over his job duties, supervision, discipline, and termination.

13. Plaintiff was employed as an at-will employee.

14. An at-will employment relationship constitutes a contractual relationship within the meaning of 42 U.S.C. § 1981.

FACTUAL ALLEGATIONS

**Plaintiff's Employment**

15. Plaintiff began working for Defendant LEGEND on or about January 20th, 2022 and worked for the Defendant for over 4 years.

16. Plaintiff WILLIAMS worked as a Sous Chef for Defendant LEGEND.

17. Plaintiff's duties included cooking, meal preparation, cleaning, caregiving, unloading trucks, and other kitchen related tasks.

18. Throughout his employment with the Defendant, Plaintiff performed his job competently and satisfactorily.  However, the harassment he experienced in the workplace, affected his ability to perform his job.

19. Notwithstanding the above, Plaintiff met Defendant's legitimate performance expectations, despite working in a hostile work environment.

20. Plaintiff was qualified for his position at all relevant times.  As he possessed all of the required skills, training and education to perform the job in question.

**Repeated Race-Based Harassment**

21. During his employment, Plaintiff was subjected to repeated racial harassment and discrimination.

22. The harassment and discrimination increased during the last year of Plaintiff's employment and became severe and pervasive.

23. A co-worker, by the name of Josh (last name unknown), who was of the white race, harassed Plaintiff on a daily basis on account of his race. Josh (LNU), worked as a cook for the Defendant.

24. On or about February of 2025, Plaintiff Williams expressed his concerns about the harassment he was enduring to Executive Director Jessica (LNU), however, no remedial action was taken. Instead, Executive Director Jessica (LNU) showed favoritism towards co-worker Josh and retaliated against Plaintiff by attempting to terminate his employment on account of false and fabricated claims involving alleged sexual harassment. Given that those claims were unfounded, Plaintiff did not lose his job.

25. On or about May of 2025, co-worker Josh escalated the racially based harassment and discrimination on Plaintiff by calling Plaintiff WILLIAMS a "nigger".

26. These racial slurs were made because Plaintiff is Black.

27. The slurs referenced Plaintiff's race and skin color.

28. Shocked, humiliated and outraged by his co-worker's unacceptable conduct, Plaintiff WILLIAMS immediately reported the incident to Executive Director Jessica (LNU), however, no remedial measures were taken.

29. The conduct occurred during working hours and in the workplace. The perpetrator, Josh (LNU), was a cook and worked the same schedule a Plaintiff, thus, contact was frequent and on a daily basis.

30. The harassment occurred on multiple occasions over the course of Plaintiff's employment as described above.

31. The harassment was not only limited to racial slurs and insults, but also included bullying and badmouthing Plaintiff to other co-workers.

32. The workplace bullying and harassment caused Plaintiff to regularly work under stress and anxiety. It also caused plaintiff depression, low self-esteem and to feel isolated at work.

33. After Plaintiff reported to his employer being called a "nigger" by his co-worker Josh, the harassment in the workplace intensified.

34. Given his employer's failure to eradicate the blatant discriminatory conduct in the workplace, Plaintiff felt helpless and defenseless.

35. On or about January of 2026, co-worker Josh called Plaintiff WILLIAMS a "nigger" once again.

36. This time, Plaintiff reported the incident to Executive Chef John, who was also of the black race. In response, Executive Chef John assured Plaintiff that he would document the incident. Notwithstanding, Plaintiff's employer again failed to remedy the situation.

37. The highly offensive and discriminatory conduct was not isolated nor stray.

38. The conduct was also humiliating, degrading, and racially charged.

39. The repeated use of the n-word is widely recognized as one of the most severe racial epithets in American society.

40. The harassment created an intimidating, hostile, and abusive work environment.

41. Plaintiff subjectively perceived the environment as hostile.

42. Any reasonable person would view the conduct described above as objectively hostile.

43. Thus, a reasonable Black employee in Plaintiff's position would also find the environment hostile and abusive.

44. The harassment and hostile work environment, affected Plaintiff's ability to perform his job, as it made it difficult to perform his duties because of the constant harassment and bullying.

45. The conduct described above affected the terms and conditions of Plaintiff's employment in many respects. For instance, it forced Plaintiff to endure an intimidating, abusive and hostile work environment as a condition of employment.

46. Plaintiff had to endure the harassment to keep his job.  Moreover, due to the workplace harassment and bullying, Plaintiff lost on opportunities to become more productive and earn more money.

47. Plaintiff not only worked in fear, but Plaintiff also had to alter his daily work activities to avoid the harassment and bullying perpetrated by his co-worker Josh.

48. Additionally, Plaintiff experienced unfair changes in work assignments and exclusion from work-related opportunities.

49. The Defendant's conduct described above negatively affected Plaintiff psychologically, since he had to perform his duties constantly under high levels of stress and anxiety.

**Management Knowledge and Ratification**

50. Given that Plaintiff was forced to endure an intimidating, abusive and hostile work environment, Plaintiff was compelled to complain to his superiors, Executive Director Jessica (LNU), and Executive Chef John, about the racial slurs, the harassment and discrimination.

51. Plaintiff informed upper management that he was being called racially offensive slurs and insults referencing his race and color.  Plaintiff reported being called a "nigger" on multiple occasions.

52. Plaintiff complained on more than one occasion during the last two months of his employment about the unlawful workplace bullying, harassment and discrimination.

53. The last time Plaintiff complained about the workplace bullying, harassment and discrimination, was at the end of January 2026, approximately one (1) month prior to his termination.

54. Defendant terminated Plaintiff shortly after his complaints. More specifically, Defendant terminated Plaintiff's employment one month after Plaintiff had engaged in statutorily protected activity for the last time.

55. Plaintiff informed management that the bullying, harassment and discrimination was frequent and ongoing.

56. Defendant had actual knowledge of the unlawful race-based bullying, harassment and discrimination in the workplace.

57. Notwithstanding, Defendant failed to conduct any meaningful investigation.

58. Defendant also failed to discipline the offending employee and Defendant failed to implement corrective measures.

59. The harassment continued and intensified after Plaintiff complained.

60. Defendant's inaction constituted ratification of the discriminatory conduct.

61. Defendant's supervisory personnel were acting within the scope of their employment.

62. Defendant's failure to act demonstrates deliberate indifference to Plaintiff's federally protected rights.

63. Ultimately, Defendant fired Plaintiff in retaliation for having engaged in statutorily protected activity.

**Disparate Treatment and Comparator Allegations**

64. After Plaintiff complained, he was subjected to increased scrutiny.

65. Plaintiff was monitored more closely than non-Black employees performing the same job duties.

66. Plaintiff was criticized for minor issues for which non-Black employees were not criticized.

67. Non-Black cooks and kitchen personnel who reported late to work were not disciplined.

68. Non-Black employees committing comparable minor infractions were not disciplined or terminated.

69. Defendant did not apply its disciplinary policies consistently.

70. Plaintiff was treated differently than similarly situated non-Black employees who were subject to the same supervisor and standards.

71. The disparate treatment was motivated by race.

72. Executive Director Jessica (LNU), showed favoritism and gave preferential treatment to Plaintiff's co-worker Josh on account of his white race.

73. Co-worker Josh was given less work, was given days off, was not required to provide doctor's notes to justify absences, etc.

**Termination and Pretext**

74. On February 25th, 2026, approximately one month after having complained about unlawful bullying, harassment and discrimination in the workplace, Defendant terminated Plaintiff's employment.

75. Defendant claimed Plaintiff was terminated for allegedly "talking to co-workers while being suspended".

76. Notwithstanding, Plaintiff was never notified about being "suspended" and Defendant had not previously warned Plaintiff that talking to co-workers while allegedly being suspended would result in termination.

77. Defendant did not terminate non-Black employees for similar issues.

78. Defendant's explanation was false and pretextual.

79. The termination occurred shortly after Plaintiff's complaints. More specifically, Plaintiff complained about the workplace harassment and discrimination at the end of January of 2026, approximately one (1) month prior to his termination.

80. The temporal proximity supports an inference of discriminatory and retaliatory intent.

81. But for Plaintiff's race and color, he would not have been terminated.

82. But for Plaintiff's complaints about race discrimination, he would not have been terminated.

83. Immediately after Plaintiff's termination, he was replaced by an individual outside of his protected group. In fact, Plaintiff was replaced by co-worker

Josh, who is white and was the individual who discriminated and harassed Plaintiff on account of his race and color.

**Damages**

84. Plaintiff suffered loss of wages and benefits.

85. Plaintiff suffered emotional distress, humiliation, embarrassment, and mental anguish.

86. Plaintiff continues to suffer economic and non-economic damages.

**COUNT I**
Race and Color Discrimination
(Disparate Treatment)
42 U.S.C. § 1981

87. Plaintiff realleges paragraphs 1–86.

88. Plaintiff's at-will employment relationship is protected under §1981.

89. Defendant intentionally treated Plaintiff less favorably than similarly situated non-Black employees.

90. Defendant terminated Plaintiff under circumstances giving rise to an inference of unlawful discrimination.

91. Defendant's stated reason for termination was pretext.

92. Plaintiff's race and color were the but-for cause of his termination.

93. Defendant intentionally interfered with Plaintiff's employment relationship because of race.

94. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

95. Plaintiff is entitled to compensatory and punitive damages and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II
Hostile Work Environment
(Race and Color)
42 U.S.C. § 1981

96. Plaintiff realleges paragraphs 1–86.

97. Plaintiff was subjected to unwelcome harassment because of race and color.

98. The harassment included repeated use of the n-word and other racially degrading language.

99. The harassment was severe and pervasive.

100. The harassment altered the terms and conditions of Plaintiff's employment.

101. Defendant had actual knowledge of the harassment.

102. Defendant failed to take prompt remedial action.

103. Defendant's deliberate indifference allowed the harassment to continue.

104. Plaintiff's race and color were the but-for cause of the hostile environment.

105. Plaintiff is entitled to compensatory and punitive damages.

## COUNT III
Retaliation
42 U.S.C. § 1981

106. Plaintiff realleges paragraphs 1–86.

107. Plaintiff engaged in protected activity by complaining about race discrimination.

108. Plaintiff complained on more than one occasion during the last two months of his employment about unlawful workplace harassment and discrimination.

109. The last time Plaintiff complained about the workplace harassment and discrimination, was at the end of January of 2026, approximately one (1) month prior to his termination.

110. Defendant was aware of Plaintiff's protected activity.

111. Defendant terminated Plaintiff shortly after his complaints. More specifically, Defendant terminated Plaintiff's employment one month after Plaintiff had engaged in statutorily protected activity.

112. The termination constitutes a materially adverse action.

113. The close temporal proximity supports an inference of retaliation.

114. Defendant's explanation is pretextual.

115. Plaintiff's protected activity was the but-for cause of his termination.

116. Defendant acted willfully and with reckless indifference to Plaintiff's statutorily protected rights.

117. Plaintiff is entitled to compensatory and punitive damages as well as attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

A. Compensatory damages;

B. Punitive damages;

C. Back pay and front pay;

D. Prejudgment interest;

E. Attorney's fees under 42 U.S.C. § 1988;

F. Costs;

G. Such other relief as the Court deems just and proper.

## Jury Trial Demand

Plaintiff WILLIAMS demands trial by a jury of all issues triable as a matter of right.

Date: April 29, 2026

Respectfully submitted,

By: **/s/ Alexis Mena-Glasgow**
Alexis Mena-Glasgow, Esq.
SIMPSON & MENA, P.A.
Florida Bar No.: 117839
2250 SW 3rd Avenue
Suite 501,
Miami, FL 33129
Telephone:   (305) 912-7665
alexis@simpsonmenalaw.com
filings@simpsonmenalaw.com